[Cite as *Law Office of Russell Kelm v. Selby*, 2017-Ohio-8239.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Law Offices of Russell A. Kelm,                    :

      Plaintiff-Appellee/                           :
      Cross-Appellant,

                                                     :          No. 15AP-1135

v.                                                  (C.P.C. No. 14CV-11956)

                                                     :

Kenneth W. Selby,                                   (REGULAR CALENDAR)

                                                     :

      Defendant-Appellant/
      Cross-Appellee.                               :

---

### D E C I S I O N

#### Rendered on October 19, 2017

---

**On brief:** *Law Offices of Russell A. Kelm, Russell A. Kelm and Colleen M. Koehler*, for appellee/cross-appellant. **Argued:** *Russell A. Kelm.*

**On brief:** *Frank J. Groh-Wargo Co., LPA, Frank J. Groh-Wargo,* for apppellant/cross-appellee. **Argued:** *Frank J. Groh-Wargo.*

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant/cross-appellee, Kenneth W. Selby, and plaintiff-appellee/cross-appellant, Law Offices of Russell A. Kelm ("the Kelm firm" or "the firm"), appeal from a judgment of the Franklin County Court of Common Pleas issued on November 30, 2015. Selby appeals the trial court's finding in favor of the Kelm firm on its claim for attorney fees. The Kelm firm appeals the trial court's award of attorney fees based on quantum meruit rather than a contingent fee. Because we find that the trial court did not abuse its discretion, we affirm its decision as to both parties.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 2}  The parties in the underlying matter, the Kelm firm and a former client, Selby, challenge the trial court's resolution of their dispute over the payment and calculation of legal fees.

{¶ 3}  Selby retained the Kelm firm to represent him in an age discrimination claim against his former employer, Abbott Laboratories ("Abbott"), which had terminated Selby's employment as part of a reduction in force action on January 28, 2014.  At the time Selby contacted the Kelm firm, Abbott had tendered an offer of 28 weeks of severance payable on regular pay days, which would be suspended if Selby were re-employed, in which event Selby would receive one-half of the remaining balance as a lump sum.  The severance offer was dated January 28, 2014 and expired by its own terms on March 28, 2014.

{¶ 4}  On February 25, 2014, Selby signed a written contingency fee agreement with the Kelm firm, which provided in part for the firm to be compensated for one-third of any recovery from Abbott in excess of Abbott's January 28, 2014 severance offer, plus expenses.

{¶ 5}  The Kelm firm entered into negotiations with Abbott on Selby's behalf beginning in March 2014.  The firm negotiated the extension of Abbott's initial severance offer to April 11, 2014.  The parties failed to reach a settlement by April 11, and Abbott's initial severance offer expired on that date.  The firm continued to negotiate with Abbott on Selby's behalf beyond the April 11 expiration date, but it also moved forward with drafting a complaint and sent it to Selby on May 1, 2014.  Selby did not authorize filing the lawsuit, and negotiations with Abbott reached an impasse.

{¶ 6}  By mid-May 2014, Selby had found a new job, which effectively reduced his damages for lost wages to a claim for nine weeks pay, making a lawsuit financially unviable.  The Kelm firm suggested negotiating for the $52,304.40 from the expired initial severance offer as a lump sum, regardless of Selby's employment status.  Selby agreed, and the firm re-opened negotiations with Abbott.  On July 11, 2014, Abbott sent a revised agreement offering a lump sum payment of the $52,304.40, without reference to Selby's employment status.

{¶ 7}  The Kelm firm initially sent Abbott's revised severance offer to an incorrect email address for Selby.  On July 23, 2014, the firm emailed the July 11, 2014 offer to Selby at his correct email address, advising that the statute of limitations on his age claim expired

in a few days, and asking if he accepted the revised severance offer or wanted to proceed with a lawsuit. Selby responded by email on July 24, 2014, stating "[n]o not yet." (Aug. 6, 2015 Resp. to Req. for Produc. at LORAK-238.) In fact, Selby signed the new agreement on July 24, and returned it directly to Abbott's legal counsel, without advising the Kelm firm that he had signed it or providing the firm with a copy of the signed document. Selby moved out of Ohio in August 2014 to take up his new job.

{¶ 8} The Kelm firm followed up with another email to Selby on July 24, 2014. However, the record before the trial court indicates Selby did not respond to that email and did not communicate with the Kelm firm until November 2014.

{¶ 9} On August 11, 2014, the Kelm firm billed Selby for a contingent fee and expenses of $11,246.82. On November 3, 2014, the firm sent Selby a ten-day demand letter via email for payment of the amount invoiced on August 11.

{¶ 10} The firm claims that Selby failed to notify it of his new address, refused to communicate with it, and refused to pay any portion of the bill for services. The firm threatened to file suit to recover attorney fees and expenses and re-billed Selby for the full amount due for his services of $18,208.36.

{¶ 11} On November 18, 2014, the Kelm firm filed a complaint against Selby, alleging he did not pay for legal services pursuant to the contingency agreement dated February 25, 2014. The Kelm firm alleged breach of contract and a right to recovery in quantum meruit and requested judgment against Selby for the sum of $18,208.36, plus interests and costs. On December 23, 2014, Selby filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6).

{¶ 12} By journal entry dated May 5, 2015, the trial court granted Selby's motion to dismiss in part and deny in part. The trial court dismissed the first count of the complaint for breach of contract, having determined that Selby had effectively discharged the firm when he proceeded to complete settlement with Abbott without notice to the firm. The trial court relied on the holding of *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570 (1994), to conclude that the Kelm firm, as a discharged attorney, was limited to a quantum meruit recovery. The trial court denied Selby's motion as to the second count of the complaint seeking recovery under quantum meruit. Additionally, the

trial court struck the jury demand because quantum meruit is an equitable action, and there is not a right to jury trial on an equitable action.

{¶ 13} On August 6, 2015, Selby filed a motion for summary judgment, arguing he was entitled to summary judgment because the Kelm firm's quantum meruit claim failed as a matter of law. He asserted the Kelm firm was not entitled to attorney fees under the theory of quantum meruit because he had never discharged the firm, which represented him through the date he accepted Abbott's final severance offer, and therefore was bound by the contingency fee representation agreement. Selby contends the Kelm firm and he fulfilled the terms of the contingency fee agreement. He argues that the firm failed to recover more than the amount of Abbott's initial severance offer; consequently, the underlying contingency failed to occur, and the firm could not, as a matter of law, recover under quantum meruit.

{¶ 14} On October 6, 2015, the trial court denied Selby's motion for summary judgment, finding that genuine questions of material fact existed as to whether the Kelm firm had been discharged.

{¶ 15} The remaining claim of quantum meruit was tried to the bench on November 24, 2015. The trial court's decision issued on November 30, 2015 included comprehensive findings of facts and conclusions of law. Having reviewed all the evidence and considered the credibility of the witnesses and the factors appropriate under Ohio law, the trial court found in favor of the Kelm firm. The trial court found that the evidence showed that Selby "was a sophisticated business man who understood the nature of the legal issues he was presenting to the Kelm firm, and who proceeded cautiously before making a legal fees agreement." (Nov. 30, 2015 Decision at ¶ 22.) The trial court continued:

> From the outset he understood that any number of lawyers might take his case, but he selected the Kelm firm. In doing so, Mr. Selby plainly understood the value their prior experience with employee terminations at Abbott brought to his case; their broad understanding of applicable law and a possible age discrimination claim; their immediate access to a statistics expert at OSU and their understanding of the potential value of such evidence in assisting Mr. Selby; and their apparent diligence and other value the firm brought to his engagement.

Id.

{¶ 16} The trial court determined that Selby had benefited from the firm's representation:

> The original offer called for periodic payments, and more importantly a 50% reduction in benefits once Selby became reemployed; the final version gave him a lump sum and contained no reduction upon reemployment. Accordingly, Selby's argument that he owes the plaintiff law firm nothing because he only ended-up getting what he had in hand when he hired them is unavailing. The material terms of the final settlement changed even though the dollar amount of the $52,304 payment by Abbott remained roughly equivalent.

*Id.* at ¶ 48.

{¶ 17} However, the trial court found that the Kelm firm ceased performing legal work for Selby on July 24, 2014, and thus was entitled to payment for legal services it sought on August 11, 2014. The trial court awarded the firm $11,246.82, the same amount it had sought on August 11, 2014, plus a $500 expense that had been overlooked. The trial court ordered the $231.75 in the firm's trust account belonging to Selby be credited to the amount owed. After that credit, the net damages awarded to the Kelm firm were $11,515.07.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Both Selby and the Kelm Firm present assignments of error for our review.

{¶ 19} Selby presents the following three assignments of error:

> [1.] The trial court erred as a matter of law in finding that appellee was entitled to attorney fees under the doctrine of quantum meruit when the appellee failed to successfully meet the conditions of a written contingency fee agreement.
>
> [2.] The trial court erred as a matter of law in finding that appellant constructively discharged appellee as his attorney.
>
> [3.] The trial court erred in awarding attorney fees without evidence demonstrating that the attorney fees were reasonable under the Code of Professional Conduct.

{¶ 20} The Kelm Firm, as cross-appellant, presents a single assignment of error:

> The trial court erred in awarding $11,515.07 in attorney fees based on the parties' contingency agreement, rather than $21,458.75 under the theory of quantum meruit.

## III.  LAW AND DISCUSSION

### A.  Standards of Review

{¶ 21}  Selby contends that the trial court's findings that he had discharged the Kelm law firm and that the firm was entitled to an award of attorney fees under the doctrine of quantum meruit, raise questions of law.  But we find on review of the record and the parties' assignments of error that the trial court's findings must be reviewed according to standards involving mixed questions of fact and law. A question of law is subject to de novo review by this court.

> We have held that " 'no court has the authority, within its discretion, to commit an error of law.' "*JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18, quoting *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7.  Thus, we review [the parties'] assignments of error for abuse of discretion but, to the extent they bear on questions of law, we review such legal questions *de novo*.

(Emphasis added.) *Irvin v. Eichenberger,* 10th Dist. No. 16AP-657, 2017-Ohio-5601, ¶ 40.

{¶ 22}  Questions of law are subject to de novo review on appeal, but the factual findings underlying a trial court's legal determinations are reviewed for abuse of discretion. *Americare Healthcare Servs., LLC v. Akabuaku*, 10th Dist. No. 12AP-917, 2013-Ohio-3013, ¶ 9.  It is well established that, in reviewing a trial court's judgment following a bench trial, an appellate court starts with the presumption that the trial court's findings are correct. *See, e.g.,  Lee v. Ohio Dept. of Job & Family Servs.*, 1oth Dist. No. 06AP-625, 2006-Ohio-6658, ¶ 11; *Broadstone v. Quillen*, 162 Ohio App.3d 632, 2005-Ohio-4278, 637 (10th Dist.); and *Patterson v. Patterson,* 3d Dist. No. 17-04-07, 2005-Ohio-2254, ¶ 26, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80 (1984).  We may not substitute our judgment for that of the trial court, and we must affirm the judgment if it is supported by some competent, credible evidence going to the essential elements of the case.  *Lee* at ¶ 11, citing *Reilley v. Richards*, 69 Ohio St.3d 352 (1994).

{¶ 23}  Once we have determined that the trial court acted within its discretion in determining facts relevant to its legal determinations, we may review de novo certain questions of law decided by the trial court as based on those facts.

> "An appellate court may freely review application of the law to the facts. It must, however, show deference to the factual

findings made by the trial court. Where there are factual disputes, it is generally the province of the trial court to resolve those disputes by weighing credibility of the proffered testimony."

(Citations omitted.) *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.*, 10th Dist. No. 02AP-454, 2003-Ohio-3334, ¶ 49, quoting *Rudd v. Online Resources, Inc.*, 2d Dist. No. 17500 (June 18, 1999). Accordingly, acknowledging our review involves mixed questions of fact and law, we review the parties' assignments of error.

## B. Selby's First and Second Assignments of Error and the Kelm Firm's Sole Assignment of Error

{¶ 24} For ease of discussion, we review in tandem Selby's first two assignments of error along with the Kelm firm's sole assignment of error, since they involve whether any fees should have been awarded and, if so, according to what legal theory.

{¶ 25} Selby alleges the trial court erred as a matter of law in finding that the Kelm firm was entitled to attorney fees under the doctrine of quantum meruit when the firm failed to successfully meet the conditions of a written contingency fee agreement. He argues the Kelm firm could only collect under the contingency fee agreement if the firm procured more than the $52,304.40 Abbott initially offered; otherwise, no fee was owed to the firm. We disagree.

{¶ 26} The trial court's decision details with particular specificity the actions the Kelm firm undertook in negotiating with Abbott on behalf of Selby both before and after Abbott's initial severance offer expired on April 11, 2014. The trial court summarized the situation as follows:

> 47. A key factual dispute here is whether any fee is due the Kelm firm, because – as is not uncommon in such situations – the Kelm firm undertook the representation of Selby only after an offer letter was already in his hands from Abbott. The fees agreement used that as a floor. Thus, Joint Ex. 1 provided, "you agree to pay us one-third (33 1/3%) of any recovery from Abbott in excess of your severance offer of seven months' pay, whether the recovery is a result of a settlement or of litigation."

> 48. As explained above, although the original severance offer was a continuing reference point in protracted discussions with [Abbot's legal counsel] after April 11, 2014, technically speaking the original offer had expired. Indeed, Mr. Selby appears to have seen it that way himself. Furthermore, in the final version

of the settlement Abbott changed a material term in their original severance pay proposal. The original offer called for periodic payments, and more importantly a 50% reduction in benefits once Selby became reemployed; the final version gave him a lump sum and contained no reduction upon reemployment. Accordingly, Selby's argument that he owes the plaintiff law firm nothing because he only ended-up getting what he had in hand when he hired them is unavailing. The material terms of the final settlement changed even though the dollar amount of the $52,304 payment by Abbott remained roughly equivalent.

(Decision at ¶ 47-48.)

{¶ 27} The trial court concluded that the evidence before it demonstrated the Kelm firm had performed legal services benefitting Selby by securing a revised severance offer from Abbott. The trial court found that, although the monetary amount of the final severance offer was the same as in Abbott's initial offer, the revised offer came without strings; that is, it was a lump sum payment rather than periodic payments, and there was no set off in the event Selby was re-employed. Consequently, the Kelm firm was entitled to fees as a matter of law.

{¶ 28} The trial court found that Selby's conduct in late July 24, 2014 constructively terminated his attorney-client relationship with the Kelm firm. As a discharged attorney, the trial court determined the law allowed the firm to recover under the doctrine of quantum meruit. Paragraphs 3 and 4 of the trial court's decision discuss the doctrine of quantum meruit and its applicability to the parties:

> 3. "*Quantum meruit* is an equitable doctrine based upon the concept that a party should not be unjustly enriched at the expense of another." *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, 2006 Ohio App. LEXIS 575, ¶ 57 (quoting *Brune-Harpenau-Torbeck Builders, Inc. v. Torbeck*, 1st Dist. No. C-971072, 1998 Ohio App. LEXIS 6234, 1998 WL 892240 (Dec. 24, 1998)). "*Quantum meruit* is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered." *Interstate* at ¶ 57 (quoting *Aultman Hospital Ass'n v. Community Mut. Ins. Co.,* 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989)).
>
> 4. While normally the presence of a contract would preclude reliance on *quantum meruit* or some other equitable doctrine,

that rule does not apply in this specific content. "When an attorney is discharged by a client with or without just cause, and whether the contract between the attorney and client is express or implied, the attorney is entitled to recover the reasonable value of services rendered the client prior to discharge on the basis of *quantum meruit*." *State ex rel. Bashein & Bashein Co., LPA v. Indus. Comm'n of Ohio*, 10th Dist. No. 10AP-642, 2011-Ohio-5168, 2011 Ohio App. LEXIS 4277, 2011 WL 4618066, ¶ 23 (additional citations omitted). "[E]ven if an attorney is discharged without cause, and even if a contingent fee agreement is in effect at the time of discharge, the discharged attorney recovers on the basis of *quantum meruit*, and not pursuant to the terms of the agreement." *Id.* at ¶ 29. The discharged attorney can attempt to recover "the reasonable value of services rendered up to the time of discharge" from his former client. *Id.*

(Emphasis sic.) (Decision at ¶ 3-4.)

{¶ 29} A trial court's determination of the amount of attorney fees is reviewed for abuse of discretion. *Wells Fargo Bank, N.A. v. Odita*, 10th Dist. No. 13AP-663, 2014-Ohio-2540, ¶ 22. The Supreme Court of Ohio has held that, " '[u]nless the amount of [attorney] fees is so high or so low as to shock the conscience, an appellate court will not interfere.' " *Id.*, quoting *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). When ruling on a request for attorney fees, the trial court must determine the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. *Odita* at ¶ 23, citing *Sims v. Nissan N. Am., Inc.,* 10th Dist. No. 12AP-833, 2013-Ohio-2662, ¶ 46, citing *Bittner* at 145. The trial court may modify the calculation in accordance with the factors set forth in Prof.Cond.R. 1.5(a), which are to be considered in determining the reasonableness of attorney fees. *Odita* at ¶ 23, citing *Sims* at ¶ 47. The party seeking an award of attorney fees bears the burden of proving the reasonableness of the fees sought. An award of attorney fees must be based on actual services performed, and there must be some evidence supporting the court's determination. *Id.*

{¶ 30} While the Kelm firm argues for an award in the amount of the product of its hourly rate multiplied by actual hours spent,[1] the trial court fairly concluded that the actual

---

[1] The Kelm firm alleges in its sole assignment of error that the trial court erred in awarding $11,515.07 in attorney fees, which was based on the firm's contingency agreement with Selby, rather than awarding $21,458.75 for hourly billing pursuant to quantum meruit.

value of the services provided Selby was one-third the amount of his recovery. The trial court appears to have based its award on the parties' earlier contingency agreement as evidence of the worth of the firm's services by that point in the parties' attorney-client relationship. We find no abuse of discretion in this valuation under the doctrine of quantum meruit.

{¶ 31} And the trial court did detail how it calculated the award of $11,515.07. The trial court made the factual determination that the Kelm firm's legal work for Selby ended on July 24, 2014. The trial court specifically noted that the firm's August 11, 2014 letter to Selby about a fee being owed "essentially acknowledged that this attorney-client work had ended." (Decision at ¶ 46.) The trial court found none of the firm's work on or after August 11, 2014 to be compensable. The trial court concluded that, had Selby paid the fee and expenses the Kelm firm sought on August 11, 2014, "this lawsuit would have been unnecessary." *Id.* at ¶ 51.

{¶ 32} Selby alleges the trial court erred as a matter of law in finding that he had constructively discharged the Kelm firm as his attorney. He contends that he did not discharge the Kelm firm as his attorney and that the firm did not withdraw from representing him. Based on the record, however, we find that the trial court's conclusion that the attorney-client relationship ended in Selby's case is based on competent, credible evidence and is not unreasonable.

{¶ 33} The trial court in its decision recited a detailed chronology of the relationship between Selby and the Kelm firm and the course of communications between them. The trial court noted that Selby, on the same day he accepted signed Abbott's settlement offer, had responded "[n]o not yet" to the firm's email asking whether to proceed with filing the lawsuit. (Resp. to Req. for Produc. At LORAK-238.) Although the trial court acknowledged that Selby was under a good deal of stress at the time due to settling his affairs in Ohio, moving his family to Illinois and beginning his new job, it found that "none of that justified his silence to his lawyer particularly about having accepted the settlement and releasing his potential claims." (Decision at ¶ 45.) The trial court further found that, although Selby was busy with his new responsibilities between August and October 2014, it did not justify "his protracted lack of communication with his lawyer, including his failure to advise the Kelm firm of his new mailing address in Illinois after he sold his home in Powell, Ohio." *Id.* at

¶ 46.   Based on the evidence before it, the trial court found that Selby's conduct constructively terminated his attorney-client relationship with the Kelm firm. We find no abuse of discretion in the trial court's reaching this conclusion.

{¶ 34} By analogy, we cite to *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18, wherein we discussed mixed questions of fact and law in the specific context of whether to admit hearsay:

> We have predominantly reviewed hearsay decisions for abuse of discretion. *See, e.g., Pontius v. Riverside Radiology & Interventional Assocs.*, 10th Dist. No. 15AP-906, 2016-Ohio-1515, ¶ 15, 49 N.E.3d 353; *Thomas v. Columbia Sussex Corp.*, 10th Dist. No. 10AP-93, 2011-Ohio-17, ¶ 17-18. A number of appellate districts, however, have taken the view that hearsay determinations involve questions of law, which are to be reviewed de novo. *See, e.g., Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. No. 2012-L-145, 2014-Ohio-2875, ¶ 23; *State v. Bates*, 6th Dist. No. WM-12-002, 2013-Ohio-1270, ¶ 41; *State v. Lusher*, 4th Dist. No. 11CA1, 2012-Ohio-5526, ¶ 49, 982 N.E.2d 1290; *Volpe v. Heather Knoll Retirement Village*, 9th Dist. No. 26215, 2012-Ohio-5404, ¶ 13; *State v. Lumbus*, 8th Dist. No. 87767, 2007-Ohio-74, ¶ 22. Hearsay decisions often require implicit determinations about facts (such as preliminary determinations of who said what in what circumstances) with the result that questions about whether to admit hearsay often are hybrid questions of fact and law. As such, they are based upon the fact-judging abilities of the trial court and are reviewed for abuse of discretion. *Pontius* at ¶ 15; *Thomas* at ¶ 17-18. * * * In *Pontius*, for example, the trial court's abject failure to analyze the applicable hearsay exception in deciding to exclude testimony, constituted an error of law and, thus, an abuse of discretion. *Id.* at ¶ 23-24.

We find no abuse of discretion in the trial court's factfinding and legal application on the subjects of Selby's owing attorney fees to the Kelm firm and how it determined such fees under the equitable doctrine of quantum meruit, finding that the Kelm firm was entitled to an award of attorney fees in the amount of $11,515.07.

{¶ 35} Accordingly, we overrule Selby's first and second assignments of error.

{¶ 36} We also overrule the Kelm firm's sole assignment of error.

### C. Selby's Third Assignment of Error

{¶ 37} Selby alleges in his third assignment of error that the trial court erred in awarding attorney fees without evidence demonstrating that the attorney fees were reasonable under the Code of Professional Conduct.

{¶ 38} The record includes two invoices the Kelm firm issued to Selby in August 2014. The invoice dated August 5, 2014 itemized the professional services rendered and was calculated based on the firm's hourly rate for a total amount of $13,678.20. The invoice dated August 11, 2014 was calculated using the contingency fee agreement for the amount of $11,246.82. The trial court, having reviewed all the evidence, considered the credibility of the witnesses and the factors appropriate for a case such as this one and awarded the Kelm firm attorney fees as damages in the amount of $11,515.07.

{¶ 39} The trial court also acknowledged that a question had arisen at the close of the Kelm firm's case "as to whether independent expert witness testimony was required to support [the firm's] legal fees claim." (Decision at ¶ 7.) The trial court discussed the ordinary rule that an attorney's explanation of his fees, their reasonableness, and the attorney's experience and knowledge in a particular area of law "may constitute sufficient evidence to support an award of fees." *Id.* at ¶ 7, citing *Odita* at ¶ 24. The trial court also discussed how independent expert witness testimony may be required to substantiate an award of attorney fees "if a client affirmatively complains during a representation that legal fees are unreasonable or excessive, or if an attorney does not keep [the] client reasonably apprised of the work being performed as the matter progresses." (Decision at ¶ 7, citing *Baker & Hostetler, L.L.P. v. Delay*, 10th Dist. Case No. 08AP-1007, 2009-Ohio-2507, ¶ 30.) The trial court did not find that to be the case. Nor did it determine that an independent expert witness was needed, explaining:

> The fees at issue were covered on the front end by a contingency fee agreement. The client received a settlement from Abbot which he accepted after receiving information about alternatives such as commencing and ADEA law suit. The relationship between the Kelm law firm and Mr. Selby neither deteriorated over concerns about work being done or left undone by the lawyers, nor genuinely broke down over the inadequacy of updates from the lawyers — notwithstanding some difficulties. More fundamentally, no claim is advanced that the Kelm firm failed to meet the standard of care expected of an attorney working on a matter such as Mr. Selby presented.

> Accordingly, nothing in the law required the Kelm firm to present an independent expert witness who had reviewed everything as part of [the firm's] burden to prove the reasonableness of fees claimed.

(Decision at ¶ 7.)

{¶ 40} An award of attorney fees must be based on actual services performed, and there must be some evidence supporting the court's determination. *Odita* at ¶ 23, citing *Sims* at ¶ 47. Reviewing the trial court's decision, we conclude that the trial court did not abuse its discretion by finding that independent expert witness testimony was not required to substantiate the Kelm firm's legal fees as being reasonable under the Code of Professional Conduct.

{¶ 41} Accordingly, we overrule Selby's third assignment of error.

## IV. CONCLUSION

{¶ 42} The record indicates that the trial court's judgment was based on competent, credible evidence going to the essential elements of the case. On review, we overrule Selby's three assignments of error and the sole assignment of error raised by the Kelm firm.

{¶ 43} For the reasons stated in the foregoing decision, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

TYACK, P.J., and DORRIAN, J., concur.