[Cite as *State v. T.K.*, 2019-Ohio-1967.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-522 |
| v. | : | (M.C. No. 17CRB-19451) |
| T.K., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 21, 2019

**On brief:** *Zach Klein*, City Attorney, *Lara N. Baker* and *Melanie R. Tobias*, for appellee. **Argued:** *Melanie R. Tobias.*

**On brief:** *Jeremy A. Roth*, for appellant. **Argued:** *Jeremy A. Roth.*

APPEAL from the Franklin County Municipal Court

BRUNNER, J.

{¶ 1} Defendant-appellant, T.K., appeals a judgment of the Franklin County Municipal Court entered on June 12, 2018, sentencing him to a suspended sentence of 180 days following a jury trial on the charge that T.K. violated a civil protection order. The trial court erred when it permitted a sheriff's deputy to testify regarding usual and appropriate conduct of pro se litigants outside protection order hearings but refused, on relevance grounds, to take testimony on the same subject from a knowledgeable witness who sought to testify on behalf of the defendant. Accordingly, we reverse and remand.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} After being in a relationship with T.K. for several years, on September 8, 2017, petitioner L.M., obtained an ex parte civil protection order against respondent T.K. (Mar. 13, 2018 Tr. at 99-101, filed Aug. 7, 2018; State's Ex. 1 at 1.) Among other things, the order required that T.K. not be present within 500 feet of L.M. and that he not initiate or

have any contact with her.  (State's Ex. 1 at 2.)  The order provided that a full hearing on the matter and any other issues raised by the petition would be held before a judge or magistrate on September 13, 2017 in a courtroom on the third floor of the Franklin County Court of Common Pleas.  *Id.* at 4.

{¶ 3}    It is apparently undisputed that T.K. did not contact L.M. at any time prior to seeing her in the courthouse on September 13.  However, L.M. testified at a trial in the misdemeanor criminal case now being appealed, that on September 13, 2017, she came to the courthouse and sat outside the designated courtroom in the hallway.  (Tr. at 101-02.)  As she waited outside the courtroom, T.K. approached and asked if she would drop the matter because he was going to lose his job if she persisted.  (Tr. at 103.)  She responded that he wasn't supposed to be talking to her and needed to go away.  *Id.*  He persisted and, according to L.M., became panicky and angry.  (Tr. at 103-05.)  An unidentified woman with whom L.M. had been chatting, notified a sheriff's deputy of the incident, and the deputy told T.K. to desist and go sit on the other side of the courtroom entrance.  (Tr. at 105-06.)  After the oral confrontation, L.M. checked her phone and saw T.K. had also sent her a text message around the same time of the oral confrontation.  (Tr. at 106-07.)  The text message read:

> Can we please just drop this?  I'll walk away.  Won't bother u anymore.  This will cost me my job in turn everything please?

(State's Ex. 2.)

{¶ 4}    When the hearing was called, due to the congested nature of the court's docket, the magistrate informed L.M. and T.K. that the case would be continued.  (Tr. at 108-09.)  L.M. then went with the sheriff's deputy to the prosecutor's office and pressed charges for what she characterized as T.K.'s harassing conduct in the hallway prior to the hearing.  (Tr. at 109.)

{¶ 5}    There is no indication in the record whether T.K. made any further attempt to negotiate or request an end to the process other than within the context of the hearing that was eventually held.  During the next hearing on the protective order, held on October 19, 2017, T.K. appeared pro se and began to ask L.M. to settle or drop the case, but he was told that was not a proper line of inquiry and required to desist.  (State's Ex. 4.)

{¶ 6}    The criminal case initiated by L.M.'s complaint and now under appeal was tried before a jury on March 13, 2018.  At trial, L.M. testified on direct examination to the

facts as set forth above.  On cross-examination, L.M. admitted that she initially testified incorrectly about the date she filed the protection order and admitted that she had actually filed it on what she knew to be T.K.'s birthday.  (Tr. at 115.)  She acknowledged that both she and T.K. litigated the protection order without an attorney and that one potential outcome of the hearing would have been to negotiate a dismissal of the protection order litigation.  (Tr. at 115-16.)  L.M. testified that she was under the impression that such negotiations could only occur in the courtroom.  (Tr. at 117.)

{¶ 7}  In addition to L.M., the State called Sheriff's Deputy Jeff Rose, who was the deputy who witnessed the interaction between L.M. and T.K. at the time of the first hearing. (Tr. at 125.)  Rose was permitted to testify that persons in court on protection orders are allowed to be within an otherwise prohibited distance of one another but they nonetheless have to stay away from each other.  (Tr. at 128-29.)  That is, he acknowledged the area in which the persons sit before the hearing happens does not permit opposing litigants to be more than 500 feet from each other.  (Tr. at 138.)  He was allowed to opine that persons in court on protection orders should not negotiate in the hallway prior to their cases being called because such discussions are futile.  (Tr. at 129.)  He elaborated, in his view, the hearing was not mandatory to attend because it was a civil matter, but said that if litigants do attend (and are therefore within 500 feet of each other) charges are not typically filed. (Tr. at 142-43.)  He confirmed that on September 13, an unknown woman notified him there was an issue in the hall.  (Tr. at 135-36.)  He therefore approached T.K. and told him he should not be communicating with L.M. or have anyone do so on his behalf.  (Tr. at 136.)

{¶ 8}  At T.K.'s criminal trial, the defense attempted to call an attorney, Daniel Fletcher, to testify that, in his 33 years of experience litigating in Franklin County, parties to protection orders frequently communicate with each other directly in the hallway when they are not represented by attorneys in order to settle their differences before going through with a full hearing.  (Tr. at 161, 164.)  Had he been allowed to testify, Fletcher would have testified that, as an attorney acting on behalf of a party to a protection order, he had never been limited in where or when he could negotiate on his client's behalf and that it is common practice to negotiate out of the courtroom before hearings.  (Tr. at 160.)  The trial court refused to permit defendant to present this testimony to the jury—it was proffered— holding it was irrelevant.  (Tr. at 153-58.)

{¶ 9}   Then the defense requested that one of two proposed instructions be given to the jury:

> If you find that the defendants alleged actions of communicating with XX and being within XXX were done within the scope of the defendant's actions of complying with a valid court order where the defendant was summoned to appear and to be heard on the issue of a protection order, you must find the defendant not guilty as it is a complete defense to the charge if the accused was acting within the scope of a valid court order that allowed him to appear in court and participate in the proceedings.
>
> [OR]
>
> If you believe that the defendant was misled by the actions of the state into believing that the terms of the temporary protection order did not apply in the courtroom, then you must find the defendant not guilty. The defendant cannot be convicted for exercising a privilege that the state misled him to believe was allowable.
>
> The defendant has the burden of proving that he was thus misled by the state by the preponderance of the evidence.
>
> Preponderance of the evidence is the greater weight of the evidence; that is, evidence that you believe because it outweighs in your mind the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive, or of greater probative value. You must weigh the quality of the evidence.
>
> CONSIDER ALL EVIDENCE. In deciding whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence, regardless of who produced it.

(Mar. 14, 2018 Def.'s Req. for Instructions at 1-2.)  The trial court declined to give either of the proposed instructions on the grounds that the facts presented at trial did not support them.  (Tr. at 169.)

{¶ 10}   The jury found T.K. guilty on March 15, 2018.  (Mar. 15, 2018 Verdict Form.) The trial court sentenced T.K. to 180 days in jail, took account of the 2 days he served when arrested for the offense, and suspended the remaining 178 days.  (June 12, 2018 Jgmt. Entry.)  The trial court stayed execution of the sentence pending this appeal.  (June 12, 2018 Stay Entry.)

## II. ASSIGNMENTS OF ERROR

{¶ 11} T.K. assigns four errors for review:

1. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT PERMITTING ATTORNEY FLETCHER TO TESTIFY RULING THAT HIS TESTIMONY WOULD NOT BE RELEVANT IN VIOLATION OF OHIO RULES OF EVIDENCE 401 & 402.

2. APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE OHIO CONSTITUTION AND THE 14TH AND 6TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

3. THE TRIAL COURT ERRED BY DENYING APPELLANT'S REQUEST FOR JURY INSTRUCTIONS ON ESTOPPEL BY ENTRAPMENT.

4. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTIONS AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. DISCUSSION

### A. First Assignment of Error – Whether Fletcher's Testimony was Properly Excluded as Irrelevant

{¶ 12} "Generally, '[t]he admission of evidence is within the discretion of the trial court.' " *Shaw v. Underwood*, 10th Dist. No. 16AP-605, 2017-Ohio-845, ¶ 25, quoting *Brown v. Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-804, 2014-Ohio-1810, ¶ 36, citing *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 38. Thus, the decision to admit or exclude evidence is reviewed for abuse of discretion. *Underwood* at ¶ 25. Yet, "[a]lthough an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, we note that no court has the authority, within its discretion, to commit an error of law." (Citations omitted.) *State v. Chandler*, 10th Dist. No. 13AP-452, 2013-Ohio-4671, ¶ 8. "We therefore review the decision of the trial court for abuse of discretion with the understanding that if the trial court erred on a question of law, even with respect to an evidentiary issue, that such is an abuse of discretion." *Pontius v. Riverside Radiology & Interventional Assocs.*, 10th Dist. No. 15AP-906, 2016-Ohio-1515, ¶ 15.

{¶ 13} Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is generally admissible (except as elsewhere provided by law) and irrelevant evidence is not admissible. Evid.R. 402.

{¶ 14} T.K. was tried for "recklessly" violating the terms of the ex parte protection order. R.C. 2919.27(A)(2).[1] The ex parte order provided in part that T.K. not be present within 500 feet of L.M. and he not initiate or have any contact with her. (State's Ex. 1 at 2.) It was undisputed at trial that, by appearing at the hearing set for the protection order on September 13, 2017 and by talking to L.M. (in person and by text message) in the hall outside the courtroom, T.K. violated the literal terms of the ex parte protection order. The disputed question at trial was whether he did so with the necessary criminal intent.

{¶ 15} Therefore, a fact (and perhaps *the* fact) that was of consequence to the determination of this action, was T.K.'s intent when he attended the hearing and approached L.M. outside the courtroom at the first continued hearing. Was his presence and contact with her a furtherance of the allegedly harassing conduct that resulted in the protection order being granted in the first place? Or was his presence and contact with her a necessary incident of his pro se appearance at a court hearing? We do not offer an opinion on these questions as such matters were for a jury to decide. We do, however, find that the jury should have heard testimony on what is normal behavior for parties to protection orders when deciding what mental state to impute to T.K., as offered by both parties.

{¶ 16} Rose was permitted to testify, as Fletcher would have done, to the general conduct of such hearings and appropriate pro se behavior in that context. (Tr. at 128-29, 138-39, 142-43.) Fletcher was not. Reviewing the trial court's ruling according to an abuse of discretion standard, we agree with the trial court that this type of testimony was relevant.

---

[1] "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). In cases such as this where "recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element." R.C. 2901.22(E). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

It placed T.K.'s actions in context in order to aid the jury in determining what T.K.'s mental state was when he spoke with L.M. outside the courtroom before the first hearing date. Rose testified, for example, that most people appear pro se for protection order hearings. (Tr. at 138-39.) He agreed that they are not generally prosecuted merely for being near one another at the hearings and in the hallway prior to the hearings. (Tr. at 128-29, 138, 143.) He opined that they do not generally negotiate their cases with each other in the hallway because "they shouldn't" and there is "no resolution that obviously is going to work." (Tr. at 129.) He also testified that, in his opinion, it was not mandatory for parties to protection order proceedings to appear for court.[2] (Tr. at 142.) Yet, the defense witness, an attorney with over three decades of experience and specific knowledge of how protection order cases transpire in the courts in Franklin County, was not permitted to offer testimony on the same subjects, any of which could have affected how the jury adjudged Rose's testimony of what is typical, allowable conduct incident to attending a protection order hearing. (Tr. at 152-64.) The sole reason given by the trial court for excluding Fletcher's testimony was relevance. (Tr. at 156.)

{¶ 17} Fletcher's proffered testimony on typical conduct in relation to protection order hearings was just as relevant to the question of T.K.'s mental state as was Rose's, and Fletcher should have been permitted to testify before the jury. Evid.R. 401. Given that the trial court allowed testimony on the same subject by a prosecution witness, it was "unreasonable" for the trial court to have declined to permit the defense witness to make a presentation on that topic. *Chandler* at ¶ 8. The evidentiary ruling by the trial court was both erroneous and unreasonable and as such was an abuse of discretion. *Id.*

{¶ 18} Whether he was present or not when the parties' exchange took place at the courthouse, Fletcher could not testify to T.K.'s mental state. Neither could Rose. Rose did and could only testify as to what he observed then and generally. (Tr. at 128-29, 138-39, 142-43.) Similarly, with Fletcher's experience, his testimony would have been what he observed generally with these types of hearings (in light of his lengthy experience in those sorts of hearings and the many opportunities he has had to observe pro se interactions in such matters). (Tr. at 161-64.) The jury had a right to hear this and T.K. had a right to have

---

[2] Fletcher, as an attorney, may have had a different opinion about whether it would be important for a party, especially a defendant, to appear at a hearing to defend against a civil stalking protection order. The record does not indicate that Rose is an attorney in addition to being a deputy sheriff.

the jury hear it. It was necessary to a fair trial. The trial court prevented this from happening on the grounds that Fletcher's testimony was irrelevant. (Tr. at 156.) If Rose's testimony about the general context was relevant (and it surely was) then so was Fletcher's. We find it was "unreasonable" for the trial court to have declined to permit this defense witness to be questioned on that topic. *Chandler* at ¶ 8. And this is the error by which the trial court abused its discretion.

{¶ 19} The State argues, even if the trial court abused its discretion in prohibiting Fletcher's testimony, it was harmless error. (State's Brief at 4-5.) Crim.R. 52(A). For error to be "harmless," it must be harmless beyond a reasonable doubt. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 27-28. In other words, " 'the cases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction.' " *Id.* at ¶ 29, quoting *State v. Rahman*, 23 Ohio St.3d 146, 151 (1986); *State v. Ferguson*, 5 Ohio St.3d 160, 166, fn. 5 (1983). Here, the State asserts that "the testimony of Ms. L.M. and Deputy Rose established that there was no legitimate reason for [T.K.] to engage in contact with Ms. L.M. while they were in the hallway of the courthouse." (State's Brief at 4.) We agree on this point, but T.K. was not permitted to offer testimony from Fletcher to challenge L.M.'s and Rose's version of the facts or to provide evidence for the jury to determine what was T.K.'s own mental state at the time. As we see it, the jury had little realistic option but to infer the necessary criminal intent from T.K.'s contact with L.M. outside the courthouse hearing before the first scheduled date. Accordingly, we cannot find beyond a reasonable doubt that the exclusion of Fletcher's testimony was harmless.

{¶ 20} The dissent challenges this, asserting "overwhelming proof" of T.K.'s guilt. (Dissent at ¶ 49.) The dissent states that, Rose "told T.K. to stay away from L.M. T.K. still did not do so. Second, after receiving the September 8, 2017 order, T.K. still elected to send a text message to L.M. the day of the hearing." *Id.* We note that L.M. herself testified, "I don't know when the text message came in to when he approached me. I don't know." (Tr. at 118.) The dissent acknowledges that the timeline is not clear in the record: "T.K. texted L.M. at some point that morning." (Dissent at ¶ 34.) The dissent's contention that T.K. refused to stay away from L.M. after being told to do so by Rose is simply not in the record. L.M. testified that T.K.'s response to Rose's instruction was to "turn[] around and look[]

out the window." (Tr. at 106.) At no time did L.M. testify or suggest that T.K. approached her or spoke to her after Rose told him not to. This does not suffice as "overwhelming proof" of T.K.'s guilt of the crime of which he was convicted. In reviewing what the trial court did according to the appellant's assignments of error, the trial court's ruling on the admissibility of Fletcher's testimony is an abuse of discretion.

{¶ 21} T.K.'s first assignment of error is sustained.

## B. Second Assignment of Error – Whether T.K. Received Ineffective Assistance of Counsel

{¶ 22} As we have sustained T.K.'s first assignment of error, requiring reversal and remand for a new trial, T.K.'s claim that he received ineffective assistance in his first trial is moot and considered no further.

## C. Third Assignment of Error – Whether the Trial Court Erred in Refusing to Give the Instructions Requested by the Defense

{¶ 23} We have sustained T.K.'s first assignment of error and that finding requires that we reverse and remand for a new trial. On remand, if a new trial proceeds, different evidence justifying different instructions may be presented. Accordingly, at this point, we consider the issue regarding jury instructions to be unripe. *See State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89 (1998).

## D. Fourth Assignment of Error – Whether T.K.'s Conviction was Insufficiently Supported or Against the Manifest Weight of the Evidence

{¶ 24} T.K.'s fourth assignment of error argues, in part, that the evidence insufficiently supported his conviction. Sufficiency is:

> "[A] term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *Black's Law Dictionary* 1433 (6th Ed.1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105

Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 25} Although we have sustained assignments of error requiring reversal and remand for a new trial, we nonetheless address the fourth assignment of error insofar as it challenges the sufficiency of the evidence because, if it were to be sustained, T.K. could not be retried. That is, "the Double Jeopardy Clause does not preclude retrial of a defendant if the reversal was grounded upon a finding that the conviction was against the weight of the evidence. However, retrial is barred if the reversal was based upon a finding that the evidence was legally insufficient to support the conviction." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 47 (1982). Hence, though T.K.'s other assignments of error are rendered moot or unripe, including the part of the fourth assignment of error that argues manifest weight, insofar as the fourth assignment of error argues sufficiency, it remains subject to review.

{¶ 26} T.K. was convicted of "recklessly" violating the terms of the ex parte protection order that included not being present within 500 feet of L.M. or having any contact with her. (State's Ex. 1 at 2.) R.C. 2919.27(A)(2). L.M. testified that as she waited outside the courtroom for the hearing on the protective order, T.K. approached and asked if she would drop the matter because he was going to lose his job if she persisted. (Tr. at 103.) She responded that he wasn't supposed to be talking to her and needed to go away. *Id.* He persisted and, according to L.M., became panicky and angry. (Tr. at 103-05.) Rose provided a backdrop for this testimony by testifying that people who appear pro se for protection order hearings do not generally negotiate their cases with each other in the hallway because "they shouldn't." (Tr. at 129, 138-39.) We find that "viewing the evidence in a light most favorable to the prosecution, a[] rational trier of fact could have found" the requisite criminal intent that T.K. acted at least "recklessly" when he violated the express terms of the ex parte protective order. *Monroe* at ¶ 47.

{¶ 27} Insofar as T.K. has argued in his fourth assignment of error that the evidence was insufficient to sustain his conviction, that portion of the assignment of error is overruled. As for manifest weight argued in his fourth assignment of error, that issue is moot because the trial court's decision is reversed and the matter remanded for a new trial.

## IV.   CONCLUSION

{¶ 28} The trial court abused its discretion when it permitted a sheriff's deputy to testify regarding usual and appropriate conduct of pro se litigants outside protection order hearings but refused to take testimony on the same subject from a lawyer with more than three decades of relevant experience who would have testified to matters relevant to T.K.'s likely mental state, an element of the crime of which he was convicted.  We sustain T.K.'s first assignment of error.  Because resolution of that issue requires remand for further proceedings and possibly a new trial, T.K.'s second, third, and part of his fourth (relating to manifest weight of the evidence) assignments of error are rendered moot or unripe.  To the extent T.K.'s fourth assignment of error argues his conviction was supported by insufficient evidence, it is overruled.  The judgment of the Franklin County Municipal Court is reversed and cause remanded.

*Judgment reversed and cause remanded.*

HANDWORK, J., concurs.
BEATTY BLUNT, J. dissents.

HANDWORK, J., retired, formerly of the Sixth Appellate
District, assigned to active duty under authority of Ohio
Constitution, Article IV, Section 6(C).

BEATTY BLUNT, J., dissenting.

{¶ 29} Because I would find that the municipal court did not abuse its discretion in excluding the testimony of an attorney who was not present on the day in focus, who had never met petitioner, L.M., or respondent, T.K., each of whom proceeded pro se, and who had no personal knowledge of the underlying events, I respectfully dissent.  My additional requisite analysis yields a determination overruling the remaining assignments of error and affirming the municipal court.

## I. FACTUAL & PROCEDURAL BACKGROUND

{¶ 30} A thorough presentation of the factual and procedural background is necessary to establish what the record before us shows.

{¶ 31} L.M. sought and obtained an ex parte civil stalking order under R.C. 2903.214 against T.K. on September 8, 2017 ("order").  I pause here to highlight two points of which the majority notes.  First, the majority comments that L.M. and T.K. had a relationship for

several years before the order. (Majority opinion at ¶ 2.) Second, the majority remarks that L.M.'s order was obtained on T.K.'s birthday. *Id.* ¶ 6. For certain, neither the length of an underlying relationship nor the timing of the civil petition is of material import to the basic issue before the municipal court—that is, whether the evidence showed that T.K. recklessly violated the order. R.C. 2919.27(A).

{¶ 32} The order provided that T.K.:

> **SHALL NOT INITIATE OR HAVE ANY CONTACT** with [L.M.] * * *. Contact includes, but is not limited to, landline, cordless, cellular or digital telephone; text; * * * or communications by any other means directly or through another person. [T.K.] may not violate this Order **even with the permission of** [**L.M.**].

(Emphasis sic.) (State's Ex. 1 at p. 2) The order also required T.K. to stay 500 feet away from L.M. *Id.* The order, which was served on T.K. the same day it was issued, further noted it remained in effect until October 10, 2017. *Id.* at 3; *see also* State's Ex. 5. The order additionally set the matter for a hearing on September 13, 2017. (State's Ex. 1 at p. 4); *see also* State's Ex. 5.

{¶ 33} T.K. and L.M. both appeared for the September 13, 2017 hearing at the common pleas courthouse. (Mar. 13, 2018 Tr. at 102.) The hallway outside the courtroom had clearly marked, separate areas for petitioners and respondents to wait for their hearing. *Id.* at 102, 127-29, 142, 143. Notwithstanding the plain posted signs separating the parties and the order's clear no communication directive, T.K. approached L.M. in the petitioner area and asked her to drop the matter. *Id.* at 103, 120. L.M. told him that he was not supposed to talk to her and to go away. *Id.* At that point, T.K. started to leave, but he then returned to where L.M. was sitting. *Id.* He told her she needed to dismiss the case or he would lose his job. *Id.* He then became angry, began yelling and sat down on the bench next to L.M. *Id.* at 104. At that point, a woman sitting on the other side of L.M. got Deputy Jeff Rose, the deputy assigned to the courtroom that day. *Id.* at 105, 126, 135. Rose said the woman appeared to have "a sense of urgency * * * like something was the matter." *Id.* at 135. Rose told T.K. to return to the respondents' area and further directed T.K. not to have any additional communication with L.M. *Id.* at 106, 136.

{¶ 34} Despite the no contact order, T.K. texted L.M. at some point that morning. *Id.* at 106, 118; *see also* State's Exs. 2, 3. In the text, he repeated his request that L.M. stop

the case because he would lose his job and "everything."  (Tr. at 106); *see also* State's Exs. 2, 3.  Ultimately, the hearing did not go forward, but L.M. filed a complaint in Franklin County Municipal Court asserting that T.K. violated the order and therefore R.C. 2919.27(A)(1) by talking to her and sending the text message in the hallway of the courtroom the day of the hearing.  (Tr. 121, 122.)  Specifically, the complaint provides T.K.:

> [D]id recklessly violate the terms of a protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code. To wit: T.K. approached L.M. and sent her a text message on September 13, 2017 in violation of the protection order granted in case number 17 CV 8079 by Judge Serrott and served on T.K. on September 10, 2017.

(Sept. 14, 2017 Compl.)   Noticeably absent from the complaint is any charge that T.K. violated the order's requirement that he stay 500 feet away from L.M. by merely attending the hearing.

{¶ 35} The matter proceeded to a jury trial in municipal court. There, L.M. testified as noted above.  Rose testified as well, and he identified T.K. as a person Rose saw in the hallway on September 13, 2017.  (Tr. at 126, 130, 136.)  Rose said he was there for security reasons because problems among civil protection litigants typically occurred at least once a week.  *Id.* at 127.  For that reason, the hallway outside the courtroom has clearly marked signs designating different areas for petitioners and respondents.  *Id.* at 128, 142.

{¶ 36} Rose testified that petitioners and respondents do not engage in settlement discussions in the hallway because "[t]hey shouldn't."  *Id.* at 129.  He clarified that once the parties obtain court relief, "there is no resolution that obviously is going to work.  So the magistrate has to get involved to try to referee it and come to an agreement or have a hearing and then base their decision off what she's heard."  *Id.*  He testified that during the hearing, the magistrate typically provides the parties with an option to reach an agreement.  *Id.* at 130.  He continued by stating that "95 percent" of civil protection order parties do not have counsel and that "[v]ery few" attorneys appear at protection hearings.  *Id.* at 139.

{¶ 37} T.K. did not take the stand.  *Id.* at 165.  He did attempt to have Attorney Daniel Fletcher testify on his behalf.  *Id.* at 152, 161.  Fletcher was not present at the September 13, 2017 hearing.  *Id.* at 161, 163.  Fletcher was not in the hallway that day and thus lacked personal knowledge of what transpired in the hallway.  *Id.* at 161, 163.  Fletcher did not know either T.K. or L.M.  *Id.* at 163.  In fact, Fletcher had never spoken to either

T.K. or L.M. *Id.* at 161, 163. While Fletcher was an attorney, both T.K. and L.M. proceeded pro se, like "95 percent" of protection order litigants. *Id.* at 139, 163. For those reasons, the trial court sustained the State's objection to Fletcher's testimony on relevance grounds. *Id.* at 155-59.

{¶ 38} T.K. proffered Fletcher's testimony. *Id.* at 159. Fletcher said he was a lawyer whom had represented both sides in protective order cases. *Id.* at 160. He testified it was his practice when representing petitioners in such matters to approach the respondent if they were unrepresented and try to resolve the issue. *Id.* He said in his experience, he often saw parties to protective order cases communicate directly when they were both pro se. *Id.* at 161. He said he was unaware of any charges being brought against a respondent for trying to resolve protective order issues, but he admitted that he lacked specific knowledge as to the cases the prosecutor's office files. *Id.* at 162, 163. He also admitted he lacked specific knowledge regarding the hearing in focus. *Id.* at 164.

{¶ 39} After each side rested, T.K. requested an estoppel by entrapment jury instruction. *Id.* at 166. Specifically, he noted that the order prohibited him from being less than 500 feet away from L.M. but that the hallway outside the common pleas' courtroom was less than 500 feet long. *Id.* at 165; *see also* T.K.'s Brief at 17-19. The municipal court denied T.K.'s motion, reasoning that there was no evidence of direction by the common pleas court to T.K. regarding approaching L.M. *Id.* at 169.

{¶ 40} After a three day trial, the jury found T.K. guilty of recklessly violating the protective order under R.C. 2919.27(A)(1).[3] *Id.* at 198. The municipal court judge sentenced T.K. to 180 days in jail, with 178 days being suspended and 2 days of jail time being credited. (June 12, 2018 Entry.) The municipal court also ordered that the civil protection order remain in effect. *Id.* The same court thereafter stayed that sentence pending resolution of this appeal.

---

[3] The complaint states the charge is premised on R.C. 2919.27(A)(1). That section provides: "No person shall recklessly violate the terms of any of the following: (1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." All agree the protective order in focus was issued pursuant to section 2919.26 or 3113.31 of the Revised Code. But, the jury's verdict finds T.K. guilty of violating R.C. 2919.27(A)(2). That section states: "No person shall recklessly violate the terms of * * * [a] protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code." The municipal court's June 12, 2018 entry, however, refers to T.K.'s violation of R.C. 2919.27(A)(1) only. Because a "court speaks through its entries," I rely upon the June 12, 2018 entry to focus on R.C. 2919.27(A)(1). (Citation omitted.) *State v. Spain*, 10th Dist. No. 10AP-319, 2011-Ohio-322, ¶ 13.

## II. ASSIGNMENTS OF ERROR

{¶ 41} My dissent requires me to address each of T.K.'s following assignments of error:

> A. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT PERMITTING ATTORNEY FLETCHER TO TESTIFY RULING THAT HIS TESTIMONY WOULD NOT BE RELEVANT IN VIOLATION OF OHIO RULES OF EVIDENCE 401 & 402.
>
> B. T.K. DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE OHIO CONSTITUTION AND THE [FOURTEENTH] AND [SIXTH] AMENDMENTS TO THE UNITED STATES CONSTITUTION.
>
> C. THE TRIAL COURT ERRED BY DENYING [T.K.'S] REQUEST FOR JURY INSTRUCTIONS ON ESTOPPEL BY ENTRAPMENT.
>
> D. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST [T.K.] WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTIONS [sic] AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

(T.K.'s Brief at 1.)

**A. The trial court did not abuse its discretion or commit an error of law when excluding the testimony of an individual with no personal knowledge of the facts and whom had never met the parties involved on relevance grounds.**

{¶ 42} Under the first assignment of error, T.K. argues the trial court improperly excluded Fletcher's testimony. The State retorts that the trial court correctly held such testimony was inadmissible as irrelevant. I concur with the State's position, and therefore depart from my colleagues on this assignment of error.

{¶ 43} The trial court has broad discretion in the admission or exclusion of testimony. *State v. Hill*, 10th Dist. No. 81AP-707 (Mar. 9, 1982). Hence, the standard under this claimed error is abuse of discretion. *Id.* An abuse of discretion is defined as an " 'unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, ¶ 23. "In order to have an 'abuse' in reaching such determination, the result must be so palpably

and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." (Citation omitted.) *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984). An abuse of discretion is therefore found only in the rare instance when the decision is unsupported by the facts and contrary to logic. (Citation omitted.) *In re Estate of Roch*, 81 Ohio App.3d 161, 165 (9th Dist.1991). Importantly, when conducting the requisite analysis, the court may not substitute its judgment for that of the trial court. *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, ¶ 11, *see also Law Offices of Russell A. Kelm v. Selby*, 10th Dist. No. 15AP-1135, 2017-Ohio-8239, ¶ 22.

{¶ 44} Evid.R. 402 establishes that evidence must be relevant to be admissible. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, the key issue is whether T.K. recklessly spoke with, and sent a text to, L.M. in violation of the order, L.M.'s stated wishes and Rose's directive.

{¶ 45} Recklessness is defined as:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C). On the pivotal point of recklessness, the record is clear that Fletcher had nothing admissible to offer establishing whether T.K. acted recklessly more or less probable. As noted above, Fletcher is an attorney. His experience is therefore necessarily limited to situations involving represented parties. But, neither T.K. nor L.M. were represented by counsel. And, Rose testified 95 percent of protection order parties were not represented by counsel. Fletcher further proffered that he talked to parties adverse to his clients before protection hearings. Those individuals apparently wanted to engage in settlement dialogue with Fletcher. Here, L.M. clearly told T.K. to leave her alone at the hearing—she did not want to negotiate.

{¶ 46} Furthermore, the general "fact" to which Fletcher would have testified was directly contradicted by the specific testimony of L.M., who was actually present the day of the hearing. To illustrate, while Fletcher proffered he would "often" see unrepresented protection order parties communicating in the hallway prior to hearings, L.M. testified no one was talking to other people in the hallway on the day of this hearing. (Tr. at 117, 161.) She testified everyone was "[p]retty much" quiet in the hallway that day. *Id.*

{¶ 47} In contrast to Fletcher's proffered testimony, Rose was present the day of the hearing and saw and spoke with T.K. Rose observed T.K.'s facial expressions and body language and personally conversed with Rose. Specifically, Rose personally instructed T.K. to refrain from communicating with L.M. in the hallway before the hearing. Rose told T.K. to return to the respondents' area. T.K. did not do so. Rose thus had personal knowledge of the underlying events that could tend to make the fact of T.K.'s recklessness in repeatedly communicating with L.M. verbally and via text in violation of the September 8, 2017 order more or less probable. Hence, I would find it was reasonable for the trial court to exclude the testimony of Fletcher, who had no personal knowledge of the parties or of the events in focus, while permitting the testimony of Rose, who was personally present and personally involved in the hallway communications with L.M. and Rose.

{¶ 48} Under these facts, I conclude that this is not the rare instance warranting reversal under the deferential abuse of discretion standard. *See State v. Fowler*, 10th Dist. No. 15AP-1111, 2017-Ohio-438, ¶ 14. The municipal court's ruling correctly excluded Fletcher's testimony as irrelevant because it did not have the tendency to make T.K.'s reckless mental state more or less probable. The municipal court's decision was supported by the facts and was not an error of law. Therefore, I would affirm the trial court and overrule T.K.'s first assignment of error.

{¶ 49} Even if the trial court incorrectly excluded Fletcher's testimony, I would find that such a decision would be harmless error. Crim.R. 52(A) defines the doctrine of harmless error in criminal cases by instructing that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." The court will not reverse a judgment for improper exclusion of evidence on a basis of error that is harmless. *State v. West*, 10th Dist. No. 06AP-111, 2006-Ohio-6259, ¶ 9. "[A]n error is harmless if the jury would not have rendered a different verdict had the excluded evidence been admitted

at trial." *Id.* In other words, "[a]n error by the trial court in excluding evidence is harmless if such evidence would not negate the overwhelming proof of defendant's guilt." (Internal quotations and citations omitted.) *State v. Fudge*, 10th Dist. No. 16AP-821, 2018-Ohio-601, ¶ 40. Fletcher's testimony would not negate the overwhelming proof of T.K.'s guilt in the case sub judice for two key reasons. First, the order prohibited T.K. from communicating with L.M. in any manner. T.K. was served with this order and therefore knew of this prohibition. Regardless, he chose to leave the clearly delineated respondents' area in the hallway and approach L.M. in the petitioners' area to ask her to drop the petition. L.M. said no and told him to leave her alone. He did not. Instead, he started to walk away but again returned, yelling at her. After sitting on the bench next to her, Rose told T.K. to stay away from L.M. T.K. still did not do so. Second, after receiving the September 8, 2017 order, T.K. still elected to send a text message to L.M. the day of the hearing. Thus, the jury could have used the testimony of L.M. and Rose and the text itself to decide that T.K. recklessly violated the order by repeatedly communicating with L.M. To the extent that any error occurred in excluding Fletcher's testimony, I conclude that it was harmless due to the overwhelming evidence of T.K.'s guilt as illustrated herein. I would, therefore, affirm the trial court and overrule the first assignment of error.

### B. The performance of T.K.'s counsel was effective and did not yield prejudice to T.K.

{¶ 50} Having overruled the first assignment of error, I must next examine whether T.K. received ineffective assistance of counsel at trial as he claims in his second assignment of error. T.K. asserts his trial counsel was ineffective largely due to alleged discovery missteps. He further alleges those errors equate to cumulative error such that reversal is required. The State counters T.K.'s arguments in this regard are merely speculative. Ultimately, I determine that neither ineffective assistance of counsel nor cumulative error is present in this case.

{¶ 51} In order to succeed on a claim of ineffective assistance of counsel, T.K. must satisfy a two-prong test. The first prong requires T.K. to demonstrate that his trial counsel's performance was deficient. To shoe that counsel's performance was deficient, he must show that his counsel committed errors which were " 'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' " *State v. Phillips*, 74 Ohio St.3d 72, 84 (1995), quoting *Strickland v. Washington*, 466 U.S. 668, 687

(1984). In this regard, T.K. "must overcome the strong presumption that [his] counsel's conduct falls within a wide range of reasonable professional assistance." *State v. Kennard*, 10th Dist. No. 15AP-766, 2016-Ohio-2811, ¶ 15.

{¶ 52} If T.K. can show deficient performance, he "must next demonstrate that he was prejudiced by the deficient performance." *Id.* at ¶ 14. To show prejudice, T.K. " 'must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different.' " *Id.* at ¶ 15, quoting *Strickland* at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome." *Kennard* at ¶ 15. " 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on as having produced a just result.' " *Id.*, quoting *Strickland* at 686.

{¶ 53} The failure to show either deficient performance or prejudice "defeats a claim of ineffective assistance of counsel." *Kennard* at ¶ 14, citing *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." (Citations and quotations omitted.) *Kennard.* at ¶ 15.

{¶ 54} T.K. first asserts his trial counsel was ineffective for failing to pursue discovery in the form of the prosecutor's file for inconsistent statements and any hallway video from the September 2017 hearing. "The reasonableness of counsel's determination concerning the extent, method and scope of any criminal discovery necessarily depends upon the particular facts and circumstances of each case." *State v. Allen*, 10th Dist. No. 02AP-862, 2003-Ohio-1114, ¶ 7. As to deficient performance, T.K. must "overcome the presumption that, under the circumstances, the challenged [in]action might be considered sound trial strategy." *Id.* Bypassing discovery in this instance could be such a strategy, albeit an unsuccessful one. *Id.*

{¶ 55} The record shows T.K.'s counsel competently and thoroughly crossed L.M. and Rose at trial. Moreover, this case had straightforward facts and a single issue. Additionally, T.K.'s counsel provided the municipal court with background information at T.K.'s sentencing. Under these circumstances, I cannot hold that T.K.'s counsel "failed to

prepare for trial or failed to exercise reasonable professional judgment." *Id.* at ¶ 9. For these reasons, I would hold that T.K. fails to meet his burden of establishing that his counsel's performance was deficient.

{¶ 56} Assuming, arguendo, that trial counsel's performance met the high standards warranting the deficient label, I would still find that no prejudice resulted. In this regard, T.K. simply argues that no one knows what might have been in the city's discovery packet. But the court directs that such an argument is unpersuasive in the context of failure to request discovery, where, as here, there is no evidence in the record as to what facts might have been discovered. *See Allen* at ¶ 10, citing *In re Baby Girl Doe*, 149 Ohio App.3d 717, 2002-Ohio-4470, ¶ 103 (6th Dist.) In addition, T.K. fails to indicate how the outcome would have been different if discovery had been conducted. *Allen* at ¶ 10. If there were inconsistent statements of L.M. or Rose, or if there was a video showing T.K. did not approach L.M., those would have been credibility determinations for the jury. Consequently, I find no prejudice here.

{¶ 57} In sum, T.K., through his discovery argument, fails to establish either deficient performance or prejudice. As such, I would hold those deficiencies defeat his discovery ineffective counsel claim under *Strickland, Phillips, Kennard* and *Allen*.

{¶ 58} Secondly, T.K. argues trial counsel incompetently advised T.K. not to testify, leaving the jury only with the unrebutted testimony of L.M. and Rose. The State correctly retorts that this is speculative, as there is nothing in the record indicating his counsel so advised. Accordingly, I would overrule this portion of the assignment of error.

{¶ 59} For his third and final contention supporting an ineffective assistance of counsel finding, T.K. argues cumulative error. "Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error." *State v. Ibrahim*, 10th Dist. No. 14AP-355, 2014-Ohio-5307, ¶ 36. Because none of T.K.'s grounds in support of his ineffective assistance of counsel assignment constitute error, the cumulative effect doctrine is inapplicable here. *See State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 124-25. Because T.K. failed to establish his trial counsel's noted inactions and alleged action were deficient or lead to

prejudice, I would hold cumulative error is not present and overrule the second assignment of error.

### C. The trial court did not err in declining T.K.'s request for jury instructions on estoppel by entrapment.

{¶ 60}  In the third assignment of error, T.K. asserts the order prohibited him from being within 500 feet of L.M.  Yet, T.K. notes, Rose testified that the hearing hallway was less than 500 feet long.  As such, T.K. reasons, the trial court erred in denying his motion to include estoppel by entrapment instructions.  The State responds that the omission was proper because T.K. was not charged with violating the 500 feet provision. The State also notes that T.K. presented no evidence establishing the common pleas court induced T.K. into speaking with and texting, L.M.  In this assignment of error, I would find the State's arguments more persuasive.

{¶ 61}  To begin, I concur with the State that the complaint does not charge T.K. with violating the 500 feet portion of the order.  Rather, the complaint explicitly alleges T.K. recklessly violated the order by approaching L.M. and sending her the text message on September 13, 2017.  (Sept. 14, 2017 Compl.)  As such, I comment that any evidence regarding the distance prohibition was irrelevant and not properly before the municipal court.  In so noting, however, I do recognize Rose's testimony that the hallway was 500 feet long and the order's distance requirement were both presented to the jury. Accordingly, I will proceed to analyze the propriety of the judge's ruling on the entrapment instruction.

{¶ 62}  The proper standard of review is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case.  *State v. Kearns*, 10th Dist. No. 15AP-244, 2016-Ohio-5941, ¶ 30. I highlight the parameters of an abuse of discretion review *supra*.

{¶ 63}  "[A] trial court has broad discretion in instructing the jury." *State v. Smith*, 10th Dist. No. 01AP-848, 2002 Ohio App. LEXIS 1507, *5 (Apr. 2, 2002).  But, " '[t]rial courts have the responsibility to give all jury instructions that are relevant and necessary in order for the jury to properly weigh the evidence and perform its duty as the fact-finder.' " *Kearns* at ¶ 30, quoting *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, ¶ 33, quoting *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 51 (10th Dist.). Conversely, " '[i]t is well established that the trial court will not instruct the jury where there

is no evidence to support an issue.' " *Columbus v. Garrison*, 10th Dist. No. 07AP-983, 2008-Ohio-3172, ¶ 17, quoting *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591.

{¶ 64} T.K., as the party asserting the affirmative defense of entrapment, had the burden of establishing that defense by a preponderance of the evidence. (Citation omitted.) *Garrison* at ¶ 18. Entrapment is established " 'where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute.' " *Id.* at ¶ 18, quoting *State v. Doran*, 5 Ohio St.3d 187 (1983), paragraph one of the syllabus. The State does not have the burden to establish the defendant's predisposition to commit the offense, because entrapment is an affirmative defense. *State v. Zeune*, 10th Dist. No. 10AP-1102, 2011-Ohio-5170, ¶ 19. Therefore, T.K., as the party asserting the affirmative entrapment defense, must present evidence supporting both that the common pleas court induced him to violate the order by speaking with and texting L.M. at the hearing and that he was not predisposed to so act. *State v. Daniels*, 10th Dist. No. 09AP-976, 2010-Ohio-3745, ¶ 24.

{¶ 65} Put simply, the facts and circumstances of this case establish that the municipal court did not err in excluding the instruction. That is because T.K. directs me to no evidence in the record establishing either aspect of his burden. In this instance, it is well-settled that the "trial court is not required to instruct a jury on an affirmative defense until the defendant has presented sufficient evidence to warrant an instruction." (Quotations and citations omitted.) *State v. Smith*, 10th Dist. No. 01AP-848, 2002-Ohio-1479, *12. And, importantly, "entrapment is not established when government officials merely afford opportunities or facilities for the commission of the offense." (Citation and internal quotations omitted.) *Daniels* at ¶ 25.

{¶ 66} For those reasons, I would conclude that T.K. failed to sustain his burden and that the trial court properly excluded the entrapment instruction. I would therefore overrule T.K.'s third assignment of error.

### D. The trial court correctly entered a guilty finding against T.K.

{¶ 67} T.K.'s fourth and final assignment of error alleges that the trial court's judgment against T.K. was based on insufficient evidence and was against the manifest

weight of the evidence. The State responds that the evidence was more than sufficient. On these points, I would concur with the State and overrule this claimed error.

### 1. Sufficiency of the Evidence

{¶ 68} In reviewing a record for sufficiency, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). Where the evidence, " 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt,' it is sufficient to sustain a conviction." *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 94, quoting *Jenks* at paragraph two of the syllabus.

{¶ 69} As noted, the central issue before the jury was whether T.K. recklessly violated the order. Recklessly is defined *supra*. T.K. asserts there was insufficient evidence of his recklessness because there is no evidence that he contacted L.M.: (1) between the order's September 7, 2017 issuance and the September 13, 2017 hearing; (2) after Rose told him to stop speaking to L.M. at the hearing; (3) between the September 13, 2017 and October 19, 2017 hearing; and (4) after the October 19, 2017 hearing. He asserts he was simply attempting to negotiate with L.M. and was, at most, negligent.

{¶ 70} In contrast, the State's response relies on the presence, not the absence, of evidence in the record. In particular, the State notes that the hallway had clearly marked areas for petitioners and respondents. The hallway was quiet that day, and no one was really talking. (Tr. at 117.) This would indicate that no one else was trying to "negotiate."

{¶ 71} T.K. then chose to leave his marked area and enter into the petitioners' space to speak with L.M. She clearly indicated she did not want to speak to, or negotiate with, him. *Id.* at 103. She did not talk to him about their case. *Id.* at 105. L.M. told T.K. to leave her alone. *Id.* at 103. He did not. Instead he became aggressive, started yelling at her, and then sat down next to her. *Id.* at 103-04. At that point, Rose told T.K. to return to the respondent area and to refrain from communicating with L.M. *Id.* at 106, 136. T.K. did not leave. *Id.* at 106. Rather, he remained seated next to L.M. *Id.* at 106. And, at some point that morning, T.K. also texted L.M., asking her to drop the matter. *Id.* at 106-08; *see also* State's Exs. 2-3.

{¶ 72} The noted evidence, if believed, would clearly convince the average mind of T.K.'s recklessness by a preponderance of the evidence. T.K. knew the order required him to refrain from communicating with L.M. Despite that knowledge, he chose to leave the respondent area and enter the petitioners' area to talk to, and yell at, L.M. She told him to leave her alone. He did not. Rose told T.K. to leave L.M. alone and to return to the petitioner's area. T.K. did not. And, T.K. sent L.M. the text during the hallway interactions. T.K.'s speaking to L.M. and texting her clearly violate the order.

{¶ 73} To me, T.K.'s noted, uncontroverted actions more than satisfy R.C. 2901.22's definition of recklessness. I would thus find that he acted with heedless indifference to the consequences by disregarding a substantial and unjustifiable risk that his conduct was likely to cause a certain result or was likely to be of a certain nature. I would conclude that, after viewing the evidence in the light most favorable to the State, sufficient evidence was introduced at trial to support T.K.'s conviction for recklessly violating the order. Consequently, I would overrule this portion of the fourth assignment of error.

### 2. Manifest Weight

{¶ 74} The "manifest weight of the evidence standard addresses the evidence's effect of inducing belief." (Citation omitted.) *Neil* at ¶ 102. When considering a manifest weight argument, the court:

> may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * In conducting our review of the evidence, we are guided by the presumption that the jury, or the trial court in a bench trial, is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.

(Internal quotations and citations omitted.) *Id.* "Reversals of convictions as being against the manifest weight of the evidence are reserved for exceptional cases where the evidence weighs heavily in favor of the defendant." *State v. Pilgrim*, 184 Ohio App.3d 675, 693, 2009-Ohio-5357, ¶ 32 (10th Dist.), citing *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶ 75} This is not the exceptional case warranting reversal. As highlighted in the immediately preceding section, the State produced strong evidence and testimony establishing T.K. recklessly violated the order. Indeed, I cannot imagine a more clear set of facts showing recklessness than what is present here. Accordingly, I am unable to conclude that the jury lost its way or that the evidence weighed heavily against T.K.'s conviction. *See Neil* at ¶ 103. As a result, I would overrule this section of the assignment of error and affirm the municipal court on this last issue.

## III. CONCLUSION

{¶ 76} Pursuant to my analysis as set forth above, I would respectfully overrule each assignment of error and affirm the judgment of the Franklin County Municipal Court.